IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPITAL LABS LLC, a Montana limited liability company; INHEALTH MANAGEMENT GROUP LLC, a Montana limited liability company, <br><br> Plaintiff, <br> vs. <br><br> MACMED HOLDINGS, LLC, an Nevada limited liability company; ANTONY MARK GROUP LLC, an Delaware limited liability company; MICHUDA HEALTH LLC, an Delaware limited liability company; MICHUDA CAPITAL INVESTMENTS LLC, an Illinois limited liability company; DOE INDIVIDUALS 1-10; and ROE ENTITIES, inclusive, <br><br> Defendants. | Case No. 25-cv-12143 <br><br> Judge <br><br><br> JURY DEMAND |

## COMPLAINT

Plaintiffs CAPITAL LABS LLC and INHEALTH MANAGEMENT GROUP LLC ("Plaintiffs"), by and through their attorneys of record, Hall & Evans, LLC, hereby file their Complaint against Defendants MACMED HOLDINGS, LLC, ANTONY MARK GROUP LLC, MICHUDA HEALTH LLC, and MICHUDA CAPITAL INVESTMENTS LLC (collectively, "Defendants") and complain and allege as follows:

## THE PARTIES

1. Plaintiff Capital Labs LLC ("Capital Labs") is a limited liability company formed under the laws of Montana with a principal place of business at 40 Enterprise Blvd, Ste 101, Bozeman, Montana 59718. The sole members of Capital Labs are JKB Innovations LLC, a Nevada limited liability company, and CN Group LLC, a Nevada limited liability company. The

sole members of both JKB Innovations LLC and CN Group LLC are citizens and residents of Clark County, Las Vegas, Nevada.

2. Plaintiff inHealth Management Group LLC ("inHealth") is a limited liability company formed under the laws of Montana with a principal place of business at 40 Enterprise Blvd, Ste 101, Bozeman, Montana 59718. The sole member of inHealth is Plaintiff CAPITAL LABS LLC, Montana limited liability company.

3. Upon information and belief, Defendant MacMed Holdings, LLC ("MacMed") is a limited liability company formed under the laws of Nevada with a principal place of business at 2173 Wilbanks Circle, Henderson, NV 89012.

4. Upon information and belief, Defendant Antony Mark Group LLC ("Antony Mark") is a limited liability company formed under the laws of Delaware with a principal place of business at 16192 Coastal Hwy, Lewes, DE 19958.

5. Upon information and belief, Defendant Michuda Health LLC ("Michuda Health") is a limited liability company formed under the laws of Delaware with a principal place of business at 16192 Coastal Hwy, Lewes, DE 19958.

6. Upon information and belief, Defendant Michuda Capital Investments LLC ("Michuda Capital") is a limited liability company formed under the laws of Illinois with a principal place of business at 18505 W. Creek Drive, Suite 1A, Tinley Park, IL 60477.

7. Plaintiffs are informed and believes and, upon such information and belief, alleges that the Defendants named herein as DOE INDIVIDUALS 1-10 and ROE ENTITIES, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and are, therefore, jointly and severally liable for the damages caused to Plaintiffs, or are the correct names of other Defendants named herein, and Plaintiffs therefore sue said Defendants by such fictitious names, and will move to amend this Complaint when more information becomes available to name these Defendants by their true names.

. . .

. . .

. . .

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceed the sum or value of $75,000 exclusive of interest and costs.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because it is where a substantial part of the events or omissions giving rise to the claims here occurred, and because the September 1, 2023 Membership Interest Purchase Agreement between Defendants MacMed Holdings, LLC, Antony Mark Group LLC, and Michuda Health LLC and Plaintiff Capital Labs LLC contains a provision providing for venue in the United States District Court of the Northern District of the State of Illinois.

10. This Court has personal jurisdiction over Defendant Michuda Capital Investments LLC because Michuda Capital Investments LLC is a limited liability company formed under the laws of Illinois with a principal place of business at 18505 W. Creek Drive, Suite 1A, Tinley Park, IL 60477, and directed communications into Illinois in connection with the transaction described herein and purposefully availed itself of the privilege of conducting business in Illinois, and the claims in this case arise out of that conduct, making the exercise of jurisdiction proper.

11. This Court has personal jurisdiction over DOE INDIVIDUALS 1-10 and ROE ENTITIES because DOE INDIVIDUALS 1-10 and ROE ENTITIES directed communications into Illinois in connection with the transaction described herein and purposefully availed themselves of the privilege of conducting business in Illinois, and the claims in this case arise out of that conduct, making the exercise of jurisdiction proper.

. . .

. . .

. . .

. . .

## FACTUAL ALLEGATIONS

### Background

12. On September 1, 2023, Defendants MacMed Holdings, LLC, Antony Mark Group LLC, and Michuda Health LLC (collectively, "Seller Defendants") and Plaintiff Capital Labs LLC ("Plaintiff") entered into a Membership Interest Purchase Agreement (the "Agreement").

13. Under the Agreement, Seller Defendants, as the one hundred percent (100%) owner of the Membership Interest (the "Membership Interest") in Plaintiff inHealth Management Group LLC (the "Company"), agreed to sell all of its interest in the Company to Plaintiff.

14. As consideration for the Membership Interest, Plaintiff agreed to assume a three-million-dollar ($3,000,000.00) Promissory Note (the "Promissory Note") due from the Company to Defendant Michuda Capital Investments LLC ("Defendant Michuda Capital"), in addition to the existing accounts payable and SBA EIDL amounts on the Company's balance sheet.

15. No money changed hands for the sale of the Membership Interest.

16. The Promissory Note required monthly payments of $31,819.65 for 36 months, with the first payment due January 1, 2024.

17. However, Section 2 of the Promissory Note specifically stated: "**Maker agrees to commit the Well Care account monthly revenue to satisfy the monthly installment payments connected to this Promissory Note**." (bold in original).

18. In Section 4.6 of the Agreement, Seller Defendants represented that "[a]ll information provided to Purchaser by Seller is complete and accurate and the Seller has not omitted to disclose any material information relevant to the Business."

19. In Section 4.17 of the Agreement, Seller Defendants specifically represented as to the Company's clients that "[t]o the knowledge of the Seller, there has not occurred any event,

happening or fact that would lead the Seller to reasonably believe that any of the Company's clients will not continue to engage the Company."

20. Prior to and even after the closing of the Agreement with Plaintiffs, the Defendants and their agents had full and complete access to the accounting records of inHealth.

### **Fraudulent Nature of the Transaction**

21. Shortly after the transaction involving the Agreement closed and only six (6) months after the payments under the Promissory Note were due to commence, on or about July 1, 2024, the Well Care account abruptly cancelled its business with the Company.

22. Defendants expressly and specifically identified the Well Care account as the source of funds for repayment under the Promissory Note and used that representation to entice Plaintiffs to enter into the Agreement.

23. Upon information and belief, Defendants were fully aware of material issues with the Well Care account prior to execution of the Agreement and intentionally withheld such information from Plaintiffs in order to entice them to enter into the Agreement. Because such information was intentionally withheld from Plaintiffs at the time of the closing of the Agreement, only Defendants possessed and continue to possess such critical information regarding the Well Care account.

24. What email communications Plaintiffs do have access to show that Defendants' owner and officer, Mark Michuda, had full and complete access to inHealth's accounting records before and after the closing of the Agreement and followed such financial records closely.

25. Defendants and Mark Michuda also had full access to inHealth's accountant before and after the closing of the Agreement.

26. Defendants and Mark Michuda knew that Well Care's account reflected that deposits from Well Care sharply declined beginning nearly immediately in 2024 and then abruptly cancelled its business with inHealth thereafter.

27. Defendants and Mark Michuda knew that the Promissory Note underscored the critical role of Well Care's continuing business with inHealth and that "the Well Care account's monthly revenue [would be used] to satisfy the monthly installment payments connected to [the] Promissory Note."

28. Despite expressly tying repayment under the Promissory Note to Well Care's continued business, Defendants failed to disclose to Plaintiffs that Well Care's continued engagement was unstable and subject to nearly immediate termination.

29. Defendants' knowledge of Well Care's declining payments, change in billing practices, and the prominence of Well Care's role in the Promissory Note made their representations in Section 4.17 of the Agreement false when made, and constituted material omissions intended to induce Plaintiffs into the transaction involving the Agreement.

30. As a result of Defendants' misrepresentations and omissions regarding the Well Care account, inHealth was left without the promised and warranted cash flow for its operations.

31. Had Plaintiffs known that the Well Care account was at risk of nearly immediate cancellation, Plaintiff would not have entered into the Agreement.

## COUNT I

**(Breach of Membership Purchase Agreement – Against Seller Defendants)**

32. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. A valid and enforceable contract existed between Plaintiff Capital Labs and Seller Defendants. On September 1, 2023, Plaintiff Capital Labs LLC and Seller Defendants executed the Membership Interest Purchase Agreement, which set forth the terms and obligations of both parties regarding the sale of one hundred percent of the membership interests in inHealth Management Group LLC.

34. The Agreement constitutes a valid and enforceable contract between Plaintiff Capital Labs and Seller Defendants and was duly executed by authorized representatives of the parties, supported by consideration, and memorialized in writing.

35. Plaintiffs performed their obligations under the Agreement. Plaintiffs performed by undertaking the repayment obligations in connection with the Promissory Note and by continuing to operate the Company in reliance on Seller Defendants' representations and warranties regarding client stability, including the ongoing engagement of Well Care.

36. Seller Defendants materially breached the Agreement by failing to disclose known risks to Plaintiffs regarding the Well Care account, despite specifically warranting under Section 4.6 that all information provided at the time of the closing was complete and accurate and further warranting under Section 4.17 that, to Seller Defendants' knowledge, no event had occurred that would lead them to reasonably believe any client, including Well Care, would not continue to engage the Company.

37. Seller Defendants breached the Agreement because the Promissory Note itself expressly identified the Well Care account as the committed source of revenue for satisfying the monthly installment payments under the Promissory Note. At the time of execution, Seller Defendants knew or should have known that Well Care's payment model was changing and that Well Care work with inHealth would be declining, yet Seller Defendants concealed this material information from Plaintiffs.

38. Seller Defendants' breach has caused injury to Plaintiff. Without the Well Care revenue stream, which was central to the repayment structure, inHealth was left without the promised and warranted cash flow for its operations.

39. As a direct and proximate result of Seller Defendants' breach, Plaintiff has suffered damages in excess of $3,000,000 plus accrued interest, as well as consequential damages related to disruption of business operations and loss of bargained-for benefits.

**COUNT II**

**(Breach of the Promissory Note – Against Defendant Michuda Capital)**

40. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 39 as if fully set forth herein.

41. A valid and enforceable contract existed between Plaintiff inHealth and Defendant Michuda Capital in the form of that certain Promissory Note, dated as of September 1, 2023, as detailed herein.

42. Plaintiffs performed their obligations under the Promissory Note. Plaintiffs performed by undertaking the repayment obligations in connection with the Promissory Note and by continuing to operate the Company in reliance on Defendant Michuda Capital's representations and warranties regarding client stability, including the ongoing engagement of Well Care.

43. Defendant Michuda Capital materially breached the Promissory Note by failing to disclose known risks to Plaintiffs regarding the Well Care account, despite acknowledging that "the Well Care account monthly revenue to satisfy the monthly installment payments connected to this Promissory Note."

44. Defendant Michuda Capital breached the Promissory Note because the Promissory Note itself expressly identified the Well Care account as the committed source of revenue for satisfying the monthly installment payments under the Promissory Note. At the time of execution, Defendant Michuda Capital, because of Defendant Michuda Capital's involvement with the Seller Defendants, knew or should have known that Well Care's payment model was changing and that Well Care work with inHealth would be declining, yet Defendant Michuda Capital concealed this material information from Plaintiffs.

45. Defendant Michuda Capital's breach has caused injury to Plaintiffs. Without the Well Care revenue stream, which was central to the repayment structure, inHealth was left without promised and warranted cash flow for its operations.

46. As a direct and proximate result of Defendant Michuda Capital's breach, Plaintiff has suffered damages in excess of $3,000,000 plus accrued interest, as well as consequential damages related to disruption of business operations and loss of bargained-for benefits.

. . .

## COUNT III

**(Fraudulent Misrepresentation– Against Defendants)**

47. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. Defendants made false statements and omissions of material fact to Plaintiffs.

49. Pursuant to Section 4.17 of the Agreement, Defendants represented that they had no knowledge of any event that would lead them to believe the Company's clients, including Well Care, would not continue to engage the Company.

50. Seller Defendants knew or believed these statements were false when made.

51. Upon information and belief, Seller Defendants knew or should have known at the time of the Agreement that the Well Care account was at risk of cancellation. This knowledge is supported by the fact that the Well Care account was cancelled nearly immediately after the payments under the Promissory Note were due to commence, and by subsequent communications in which Defendants' owner and officer admitted that Well Care deposits had declined and then ceased entirely.

52. Defendants expressly and specifically identified the Well Care account as the source of funds for repayment under the Promissory Note and used that representation to entice Plaintiffs to enter into the Agreement.

53. Upon information and belief, Defendants were fully aware of material issues with the Well Care account prior to execution of the Agreement and intentionally withheld such information from Plaintiffs in order to entice them to enter into the Agreement. Because such information was intentionally withheld from Plaintiffs at the time of the closing of the

Agreement, only Defendants possessed and continue to possess such critical information regarding the Well Care account.

54. What email communications Plaintiffs do have access to show that Defendants' owner and officer, Mark Michuda, had full and complete access to inHealth's accounting records before and after the closing of the Agreement and followed such financial records closely.

55. Defendants and Mark Michuda also had full access to inHealth's accountant before and after the closing of the Agreement.

56. Defendants and Mark Michuda knew that Well Care's account reflected that deposits from Well Care sharply declined beginning nearly immediately in 2024 and then abruptly cancelled its business with inHealth thereafter.

57. Defendants and Mark Michuda knew that the Promissory Note underscored the critical role of Well Care's continuing business with inHealth and that "the Well Care account's monthly revenue [would be used] to satisfy the monthly installment payments connected to [the] Promissory Note."

58. Despite expressly tying repayment under the Promissory Note to Well Care's continued business, Defendants failed to disclose to Plaintiffs that Well Care's continued engagement was unstable and subject to nearly immediate termination.

59. Defendants' knowledge of Well Care's declining payments, change in billing practices, and the prominence of Well Care's role in the Promissory Note made their representations in Section 4.17 of the Agreement false when made, and constituted material omissions intended to induce Plaintiffs into the transaction involving the Agreement.

60. As a result of Defendants' misrepresentations and omissions regarding the Well Care account, inHealth was left without the promised and warranted cash flow for its operations.

61. Had Plaintiffs known that the Well Care account was at risk of nearly immediate cancellation, Plaintiff would not have entered into the Agreement

62. Plaintiffs acted in reliance on the truth of Defendants' statements and/or omissions.

63. Plaintiffs relied on these representations in deciding to purchase the Membership Interest, believing that the Well Care account would provide the committed monthly revenue required to satisfy the installment payments.

64. Plaintiffs' reliance was reasonable given the express representations in the Agreement.

65. Plaintiff suffered damage because it relied on Defendants' false statements and omissions. As a direct and proximate result of Defendants false statements and omissions, Plaintiffs have suffered damages in excess of $3,000,000 plus accrued interest, as well as consequential damages related to disruption of business operations and loss of bargained-for benefits.

## COUNT IV

### (Negligent Misrepresentation – Against All Defendants)

66. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

67. Defendants made false statements and omissions of material fact to Plaintiffs.

68. Defendants made false statements and omissions of material fact regarding the Company's clients, particularly the Well Care account, by representing in Section 4.17 of the Agreement that they had no knowledge of any event that would lead them to believe the Company's clients would not continue to engage the Company.

69. Defendants were careless or negligent in ascertaining the truth of these statements.

70. Given that the Well Care account was specifically identified as the source of repayments under the Promissory Notice, Defendants was careless or negligent in failing to

inform Plaintiffs of the instability of the Well Care relationship before making representations about it.

71. Upon information and belief, Defendants were fully aware of material issues with the Well Care account prior to execution of the Agreement and intentionally withheld such information from Plaintiffs in order to entice them to enter into the Agreement. Because such information was intentionally withheld from Plaintiffs at the time of the closing of the Agreement, only Defendants possessed and continue to possess such critical information regarding the Well Care account.

72. What email communications Plaintiffs do have access to show that Defendants' owner and officer, Mark Michuda, had full and complete access to inHealth's accounting records before and after the closing of the Agreement and followed such financial records closely.

73. Defendants and Mark Michuda also had full access to inHealth's accountant before and after the closing of the Agreement.

74. Defendants and Mark Michuda knew that Well Care's account reflected that deposits from Well Care sharply declined beginning nearly immediately in 2024 and then abruptly cancelled its business with inHealth thereafter.

75. Defendants and Mark Michuda knew that the Promissory Note underscored the critical role of Well Care's continuing business with inHealth and that "the Well Care account's monthly revenue [would be used] to satisfy the monthly installment payments connected to [the] Promissory Note."

76. Despite expressly tying repayment under the Promissory Note to Well Care's continued business, Defendants failed to disclose to Plaintiffs that Well Care's continued engagement was unstable and subject to nearly immediate termination. Defendants made these statements with the intent to induce Plaintiff to act.

77. Defendants made these representations to induce Plaintiff to purchase the Membership Interest and enter into the Agreement.

78. Plaintiffs acted in reliance on the truth of Defendants' statements and/or omissions.

79. Plaintiffs relied on these representations in deciding to purchase the Membership Interest and enter into the Agreement.

80. Plaintiffs suffered damage as a result of its reliance on Defendants' false statements and omissions.

81. Defendants had a duty to communicate accurate information to Plaintiffs.

82. As the more informed party to the business transaction making specific representations about the inHealth's clients and assets, Defendants had a duty to communicate accurate information to Plaintiffs and failed to do so.

83. As a direct and proximate result of Defendants false statements and omissions, Plaintiffs have suffered damages in excess of $3,000,000 plus accrued interest, as well as consequential damages related to disruption of business operations and loss of bargained-for benefits.

## COUNT V

**(Breach of Warranty – Against All Defendants)**

84. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85. Defendants made express warranties to Plaintiff.

86. Section 4.6 of the Agreement contained an express warranty that "[a]ll information provided to Plaintiff by Defendants is complete and accurate and the Defendants has not omitted to disclose any material information relevant to the Business."

87. Defendants breached this warranty when the Well Care account, which was specifically identified in the Promissory Note as the source of repayment of the Promissory Note, abruptly cancelled their business with inHealth shortly after the transaction, demonstrating that the information provided to Plaintiffs about this account was not complete or accurate.

88. Defendants and Mark Michuda knew that the Promissory Note underscored the critical role of Well Care's continuing business with inHealth and that "the Well Care account's monthly revenue [would be used] to satisfy the monthly installment payments connected to [the] Promissory Note."

89. Despite expressly tying repayment under the Promissory Note to Well Care's continued business, Defendants failed to disclose to Plaintiffs that Well Care's continued engagement was unstable and subject to nearly immediate termination. Defendants made these statements with the intent to induce Plaintiff to act.

90. Defendants' breach of their warranties under the Agreement has caused injury to Plaintiff.

91. As a direct and proximate result of Defendants false statements and omissions, Plaintiffs have suffered damages in excess of $3,000,000 plus accrued interest, as well as consequential damages related to disruption of business operations and loss of bargained-for benefits.

## COUNT VI

**(Recission – Against All Defendants)**

92. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. Defendants substantially failed to perform their obligations under the Agreement by misrepresenting and omitting material facts that were essential to Plaintiff's decision to enter the transaction.

94. Defendants substantially failed to perform its obligations under the Agreement by misrepresenting the condition of the Company's client relationships, particularly the Well Care account, which was identified as the primary source of revenue to service the $3,000,000.00 Promissory Note. This information was never disclosed to Plaintiff before execution of the Agreement.

95. Defendants' breach defeated the essential purpose of the Agreement. The Agreement and the Promissory Note both rested on the assumption that Well Care revenues would continue to fund repayment. The Promissory Note expressly provided in bold that "**the Well Care account monthly revenue [would] satisfy the monthly installment payments connected to this Promissory Note**."

96. The Well Care account was specifically identified in the Promissory Note as the source of revenue for loan payments, making it essential to the purpose of the Agreement. Defendants' misrepresentations and omissions regarding this account defeated the essential purpose of the Agreement.

97. Because Defendants' breach and misrepresentations go to the core of the Agreement, rescission is the appropriate remedy. Monetary damages alone cannot adequately restore Plaintiffs to the position it occupied prior to execution, as Plaintiffs were induced to assume a multi-million-dollar debt obligation that it never would have accepted had the truth been disclosed.

98. Plaintiffs are ready, willing, and able to restore the parties to the status quo by returning the Membership Interest in the Company to Defendants. In exchange, Plaintiffs seeks rescission of the Agreement and release from the Promissory Note obligation and other liabilities assumed under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1. Compensatory damages against all defendants in an amount to be determined at trial, but not less than $3,000,000.00, plus interest;

2. Rescission of the Membership Interest Purchase Agreement, returning the parties to their pre-contract positions, with Plaintiffs returning the Membership Interest to Defendants and Defendants releasing Plaintiffs from the obligation to pay the Promissory Note;

3. A declaratory judgment pursuant that Defendants breached the Membership Interest Purchase Agreement and that Plaintiffs are not obligated to continue payments under the Promissory Note;

4. Punitive damages against all Defendants in an amount to be determined at trial;

5. Reasonable attorneys' fees and costs incurred in bringing this action;

6. Pre-judgment and post-judgment interest as allowed by law; and

7. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 3rd day of October 2025.

HALL & EVANS, LLC

*/s/ Edward A. Khatskin*
Edward A. Khatskin, (IL BAR 6319840)
121 West Wacker Drive
Suite 2150
Chicago, IL 60601
(224) 335-7557
khatskine@hallevans.com

Adam R. Knecht, Esq. *(Pro Hac Vice Pending)*
Nevada Bar No. 13166
1160 North Town Center Drive
Suite 330
Las Vegas, Nevada 89144
(702) 998-1022
nvefile@hallevans.com

*Attorneys for Plaintiffs*